**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE
CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

John Strasswimmer, David Vreeland King, and Claudia
Treyer Miles, Respondents,

v.

Mary Michelle Miles, Appellant.

Appellate Case No. 2024-000599

———————

Appeal From Horry County
B. Alex Hyman, Circuit Court Judge
Kathy G. Ward, Probate Judge

———————

Unpublished Opinion No. 2025-UP-374
Heard September 9, 2025 – Filed November 5, 2025

———————

**AFFIRMED**

———————

Melody Joy Edelman Breeden, of Turner Padget Graham
& Laney, PA, of Myrtle Beach, for Appellant.

Marissa Noelle Drost, of The Floyd Law Firm PC, of
Surfside Beach, and Thomas Jarrett Bouchette, of Burr &
Forman LLP, of Myrtle Beach, both for Respondent John
Strasswimmer.

Reese R. Boyd, III, of Boyd Law Group, of Myrtle
Beach, for Respondent David Vreeland King.

**PER CURIAM:** Mary Michelle Miles (Michelle) appeals multiple orders of the probate and circuit courts regarding her service as the temporary guardian for her mother, Dr. Claudia Miles (Dr. Miles), and ordering her to repay certain expenditures to Dr. Miles's estate (the Estate). On appeal, Michelle argues the circuit court erred by (1) finding she was not an appropriate temporary guardian for Dr. Miles; (2) finding she breached her fiduciary duties to Dr. Miles by improperly disbursing Dr. Miles's assets; (3) finding she failed to submit a proper accounting; (4) granting sanctions against her; (5) ordering her to repay various expenditures totaling $251,931.87 to the Estate; (6) finding her jointly liable, along with her brother John Strasswimmer (John), for attorney's fees incurred by Dr. Miles's husband, David King (David); and (7) admitting the testimony of attorney Clifford Tall. We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1. We hold the circuit court correctly found Michelle breached her fiduciary duty to Dr. Miles due to her improper expenditures of Dr. Miles's funds; we also find Michelle breached her duty based on other conduct that was not in Dr. Miles's best interest—namely, her disregard for David's visitation rights and her failure to file a complete accounting. *See Bennett v. Est. of King*, 436 S.C. 614, 621–22, 875 S.E.2d 46, 50 (2022) ("[A]n action for breach of fiduciary duty is either an action at law or in equity depending on the remedy sought."); *Lee v. Lee*, 251 S.C. 533, 164 S.E.2d 308 (1968) ("Numerous decisions of this court are in accord with the proposition that equity has jurisdiction 'where a fiduciary relation exists between the parties, and the duty rests upon the defendant to render an accounting.'" (quoting *Devereux v. McCrady*, 46 S.C. 133, 24 S.E. 77, 82 (1896))); *Greer v. Spartanburg Technical College*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct. App. 1999) ("In reviewing a proceeding in equity, this court may find facts based on its own view of the preponderance of the evidence."). The financial records are replete with instances of excessive spending that Michelle could not or would not explain, such as $2,500 on restaurants and dining, $12,000 on groceries, $6,400 on clothing and shoes, $800 on furniture reupholstery, $1,500 at FedEx, and $1,000 at The UPS Store; additionally, there was an unknown charge for approximately $11,600. Moreover, we find the expenditures to renovate Michelle's home were inappropriate because Michelle was well aware that her appointment as guardian was temporary and heavily contested and that there was a very real possibility that Dr. Miles would ultimately return to South Carolina for care; she knew David had also filed a petition seeking to be appointed as the permanent guardian; and she was aware that a trial had been scheduled on the issue. Michelle also demonstrated a blatant disregard for the probate court's orders regarding David's visitation with

Dr. Miles in contravention of Dr. Miles's best interests. Finally, Michelle repeatedly failed to comply with the probate court's order to submit a complete accounting to justify her spending, and the "accounting" she ultimately submitted was insufficient as it did not contain any receipts or documentation to corroborate the spending she reported.[1] *See RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 335–36, 732 S.E.2d 166, 173 (2012) ("To establish a claim for breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty owed to the plaintiff by the defendant, and (3) damages proximately resulting from the wrongful conduct of the defendant."); S.C. Code Ann. § 62-1-201(15), (18) (2022) (defining "[f]iduciary" to include a "person appointed by the court as guardian"); *Moore v. Moore*, 360 S.C. 241, 253, 599 S.E.2d 467, 473 (Ct. App. 2004) ("Damages in an action for breach of a fiduciary duty are those proximately resulting from the wrongful conduct of the defendant.").

2. We hold the issues regarding Michelle's expenditures as temporary guardian— including the findings that she must repay the Estate in the amount of $251,931.87, that she is responsible for paying David's attorney's fees, and the grant of sanctions against her—are not preserved for this court's review.[2] *See Ulmer v. Ulmer*, 369 S.C. 486, 490, 632 S.E.2d 858, 860 (2006) ("Under the Probate Code, final orders or decrees of the probate court may be appealed to the circuit court."); *id.* at 490, 632 S.E.2d at 860 ("In reviewing an appeal from the probate court, the circuit court

---

[1] Michelle also argued the probate court erred in applying section 62-5-103 of the South Carolina Code (2022) to find that the expenditures she made as guardian were in excess of her authority as temporary guardian. Section 63-5-103(A) states that "[a] *person under a duty to pay or deliver money* or personal property to a[n] . . . incapacitated individual may perform this duty in amounts not exceeding a net aggregate amount of fifteen thousand dollars each year." Although we agree that this statute was inapplicable to Michelle as temporary guardian, even without considering this statute in relation to Michelle's management of Dr. Miles's money, there is sufficient evidence in the record to uphold the finding that she breached her fiduciary duty and is responsible for repaying the Estate for those improper expenditures. Thus, we find no reversible error as to this issue. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) ("[W]hatever doesn't make any difference, doesn't matter.").

[2] Michelle listed fourteen issues in her statement of issues on appeal. Our holding in this section is applicable to all issues regarding the expenditures she was ordered to repay and the calculation of those amounts, the sufficiency of the accounting, David's attorney's fees, and the grant of the Guardian ad Litem's motion for sanctions.

must apply the same rules of law as an appellate court would apply."); *id.* at 490, 632 S.E.2d at 861 ("Further, the circuit court has appellate jurisdiction over only those matters which are properly appealed."); *In re Timmerman*, 331 S.C. 455, 460, 502 S.E.2d 920, 922 (Ct. App. 1998) ("The South Carolina Rules of Civil Procedure are applicable in the probate court to the extent they are not inconsistent with the Probate Code or probate court rules."); *id.* (explaining that a motion to alter or amend a judgment pursuant to Rule 59(e) is not inconsistent with the Probate Code and is therefore applicable); *Nelums v. Cousins*, 304 S.C. 306, 307, 403 S.E.2d 681, 681–82 (Ct. App. 1991) (finding an issue unpreserved when "the trial court was never afforded the opportunity to rule on the clarity of its order because [the appellant] made no motion, as she was required to do, pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure"). We hold Michelle was required to file a Rule 59(e) motion seeking clarification of the probate court's post-trial motion order (PTM Order) because the order is unclear as to the reasoning for its mandate that Michelle repay approximately $251,000 to the Estate and approximately $25,000 for David's attorney's fees—whether this was reimbursement for improper spending, a sanction for violating the court's order to submit an accounting, or some combination of the two. Although the probate court found Michelle had breached her fiduciary duty as temporary guardian in its interim and final orders, the PTM Order was the first time Michelle was mandated to repay any monies to the Estate or to pay David's attorney's fees. Moreover, the probate court did not include a detailed breakdown of the amount to be repaid to the Estate, and there is no explanation in the PTM Order as to how the court reached that number.[3] Additionally, as to attorney's fees, the order initially stated that David was "entitled to reimbursement of legal fees jointly from [John] and

---

[3] The probate court's order stated Michelle must repay the Estate for the expenses to renovate her personal home and the costs to employ Synergy HomeCare. However, the section of the PTM Order regarding the GAL's motion for sanctions states Michelle must reimburse the amount spent "on her personal residence," including "home improvements" and "furnishings not returned to the Estate," but it does not give a figure; the Final Order approximates this spending at $70,000 for the renovations. The PTM Order does specify that Michelle spent $179,971.99 to employ Synergy. Even if we were to assume the probate court contemplated $70,000 for home renovations as approximated in the Final Order, the sum is only $249,971.99, or approximately $2,000 less than the final amount included in the PTM Order. Moreover, the GAL repeatedly stated Michelle misappropriated over $350,000 and Michelle conceded that she disbursed $453,474.82 in approximately five months as temporary guardian. Thus, it is unclear exactly why or how the probate court arrived at the figure of $249,971.99 for repayment.

[Michelle];" however, in its mandate, it stated that *John* was "liable for $77,034.00" in attorney's fees for David, without mentioning any liability or contribution from Michelle.

Further, we find the record on appeal is insufficient for us to "make an intelligent review" of these issues because it does not include the Statement of Issues on appeal to the circuit court or the briefs filed in the circuit court upon which the parties relied at the hearing; instead, the record included only the notice of intent to appeal which simply lists the orders being appealed to the circuit court, not the grounds. *Kneece v. Kneece*, 296 S.C. 28, 32, 370 S.E.2d 288, 290 (Ct. App. 1988) ("An issue either not presented to the trial court or not properly preserved by an exception presents no question before us on appeal."); *Windham v. Honeycutt*, 290 S.C. 60, 63, 348 S.E.2d 185, 187 (Ct. App. 1986) ("The burden is on the appellant to furnish a sufficient record on appeal from which this court can make an intelligent review."). The circuit court order states that "the appellate briefs of [Michelle] and [John] each contain[ed] a statement of issues on appeal," and as to Michelle, the circuit court affirmed "each and every decision made by the probate court in connection with those issues on appeal," with the exception of the finding that Michelle and John should be jointly liable for David's attorney's fees, which it remanded to the probate court for a more specific apportionment. However, the circuit court's order does not specifically set forth the issues Michelle raised to it; the transcript of the circuit court hearing contains approximately six pages of argument by Michelle, in which she reiterates her arguments that any funds expended were "used for [Dr. Miles]'s interests" and she was "working with what she was able to do under the circumstances," she had submitted a proper accounting, there was nothing "in the record that reflect[ed] harm specifically to Dr. Miles in this action," and the probate court was generally incorrect regarding its findings as to Michelle. Notably, Michelle referred the circuit court to her brief in support of her arguments raised in the appeal. Thus, without the Statement of Issues on appeal or the briefs, we cannot be sure exactly what issues were raised to the circuit court or the grounds argued. *See State v. Franks*, 432 S.C. 58, 79, 849 S.E.2d 580, 591–92 (Ct. App. 2020) (quoting *State v. Williams*, 303 S.C. 410, 411, 401 S.E.2d 168, 169 (1991)) ("Generally, this [c]ourt will not consider issues not raised to or ruled upon by the trial [court]."); *Bonaparte v. Floyd*, 291 S.C. 427, 444, 354 S.E.2d 40, 50 (Ct. App. 1987) (declining to address the appellant's claim of error because the appellant failed to furnish this court with a sufficient record on appeal to permit consideration of the issue); *Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 329, 730 S.E.2d 282, 285 (2012) (stating that "we are not precluded from finding an issue unpreserved even when the parties themselves do not argue error preservation to us").

3. We hold the remaining issues are moot because Dr. Miles has passed away and no longer needs a guardian or legal counsel, nor is there any legal issue for this court to resolve concerning her placement.[4] *See State v. Passmore*, 363 S.C. 568, 581, 611 S.E.2d 273, 280 (Ct. App. 2005) ("A case becomes moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy, thus making it impossible for the reviewing court to grant effectual relief."); *Sloan v. Greenville County*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009) ("Mootness also arises when some event occurs making it impossible for the reviewing court to grant effectual relief.").

**AFFIRMED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**

---

[4] Our holding in this section applies to all issues regarding whether Michelle was an appropriate temporary guardian, the placement of Dr. Miles at Franke Toby Jones, and the testimony of Clifford Tall.